UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | |
|---|---|
| In re:                                      )<br>                                              )<br>                                              )<br>  CAPE ANN HOUSING                            )<br>  OPPORTUNITY, INC.,                          )<br>                                              )<br>           Debtor.                            )<br>                                              ) | Chapter 7<br><br>Case No. 09-10074-FJB |

**MOTION OF CHAPTER 7 TRUSTEE TO APPROVE PRIVATE SALE OF
DEBTOR'S RIGHTS IN REAL PROPERTY KNOWN AS POND VIEW
VILLAGE, 147 ESSEX AVENUE, GLOUCESTER, MASSACHUSETTS TO
<u>MASSACHUSETTS HOUSING INVESTMENT CORPORATION</u>**

John O. Desmond, the Chapter 7 Trustee ("Trustee") of Cape Ann Housing

Opportunity, Inc. (the "Debtor"), hereby requests that the Court enter an order pursuant to

§§363 and 365 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure and MLBR 6004-1 approving (i) the private sale, free and clear of

all liens, claims, encumbrances and interests of any kind or nature except as expressly

provided herein, of the Debtor's right, title and interest in and to the real property located

at 147 Essex Avenue, Gloucester, Massachusetts (the "Premises"), and (ii) the

assumption and assignment of the Debtor's right, title and interest in and to three leases

respecting the Premises under which the Debtor is currently the lessor (the "Leases"), to

the Massachusetts Housing Investment Corporation ("MHIC") or its nominee, or such

person or entity that submits a higher and better offer for the Premises and the Leases

pursuant to procedures ordered by this Court.

In further support of this Motion, the Trustee states as follows:

1.      The Debtor commenced this Chapter 7 case by filing a voluntary petition for relief on January 6, 2009 (the "Petition Date").

2.      On January 7, 2009, the Trustee was appointed Chapter 7 trustee for the Debtor.

3.      The Premises consists of a 20.7-acre parcel, including a 7-acre pond known as Lower Banjo Pond, located at 147 Essex Avenue, Gloucester, Massachusetts.

4.      The Debtor acquired the Premises for the purpose of developing affordable housing at the site. To facilitate that development, the Debtor entered into three ground leases for portions of the property (collectively, the "Lease Parcels"): (i) an Amended and Restated Ground Lease dated as of March 4, 2005 with 147 Essex Avenue LLC (the "Phase I Lease"); (ii) an Amended and Restated Ground Lease dated as of March 4, 2005 with 147 Essex Avenue II LLC (the "Phase II Lease"); and (iii) the Phase III Condominium Ground Lease dated as of March 4, 2005 with 147 Essex Avenue III LLC (the "Phase III Lease" and, collectively with the Phase I Lease and the Phase II Lease, the "Ground Leases"). Each of the Ground Leases has a 99-year term, with base rent obligations totaling $43,317,915 for all three Ground Leases having been paid in full as of the execution thereof. The only remaining rental obligations arising under the three Ground Leases obligate the tenants thereunder to pay real estate taxes, insurance premiums and other ongoing costs relating to the maintenance of the Lease Parcels.

5.      Each of the tenants under the Phase I Lease and the Phase II Lease is owned and/or controlled by MHIC, a Massachusetts not-for-profit corporation actively engaged in the development and/or financing of affordable housing in the Commonwealth. Two residential complexes have been built on the Lease Parcels subject

to the Phase I Lease and the Phase II Lease; one is a rental apartment building, while the other consists of condominium units.

5.      As a result of defaults by the Debtor, MHIC foreclosed its leasehold mortgage on the Phase III Lease, and the tenant's interest under the Phase III Lease was subsequently transferred to the Caleb Foundation, a third-party not-for-profit developer of affordable housing.  That developer is currently in the process of procuring permits and financing for the development of a residential project on the property subject to the Phase III Lease.

6.      Aside from the Lease Parcels, the Premises consist of common areas on which are located roadways, parking lots and landscaped areas.  Also located on the Premises is Lower Banjo Pond, and a small (2,600 square feet) building known as "Building D."  Under the original plans for the development, Building D was to serve as a day-care facility for residents of the apartments located there.

7.      In connection with the development of the Premises, the Debtor executed and recorded a Declaration of Development Obligations and Reciprocal Easement Agreement dated as of March 4, 2005 (the "Declaration").  Among other things, the Declaration allocated responsibilities for common areas, roadways and parking facilities among the Debtor and the tenants under the Ground Leases (collectively, the "Ground Lease Tenants"), and provided cross-easements for the use of those common areas, roadways and parking facilities.  Under the Declaration, the Debtor is responsible for maintaining common areas, parking facilities and roadways, with the right under certain circumstances to share the costs of such tasks with the Ground Lease Tenants.

8.      With the Debtor no longer performing management functions at the

Premises, those responsibilities have been assumed by MHIC, at its own cost and

expense.  MHIC has also retained an environmental consultant to perform remediation

and monitoring work at the site required under Massachusetts regulations as well as

directives of the Massachusetts Department of Environmental Protection ("DEP").

9.      MHIC has offered to pay the Trustee $25,000 (the "Purchase Price") for

the Debtor's rights in and to the Premises.  By acquiring the Debtor's rights in the

Premises, MHIC is purchasing (i) the landlord's interest under the three Ground Leases

(each providing for no further rent payable to the Debtor), (ii) the common areas

(carrying with them maintenance obligations set forth in the Declaration), (iii) Building D

(as noted above, a small unoccupied building), and (iv) Lower Banjo Pond (collectively,

the "Property Rights").  The Trustee has been furnished with an appraisal of the value of

the Premises, and a description of the costs associated with the remaining environmental

work required at the Premises.  Based on this information, the Trustee has concluded that

the Purchase Price represents the fair market value of the limited rights of the Debtor in

the Premises.  The Trustee has also concluded that, in view of the limited interests of the

Debtor in the Premises and the environmental costs associated with the property, it is

unlikely that any other party would be willing to pay the Trustee more than the Purchase

Price.

10.     On October 30, 2009, the Trustee and MHIC entered into a Purchase and

Sale Agreement (the "P&S Agreement"), setting forth the Purchase Price and other terms

pursuant to which MHIC proposes to purchase the Premises and the Ground Leases.  The

P&S Agreement is attached hereto as Exhibit A.

11.     The Trustee proposes to sell the Debtor's rights in and to the Premises, and assign the Debtor's rights under the Ground Leases, for the Purchase Price, and otherwise pursuant to the terms set forth in the P&S Agreement, to MHIC, or to such other buyer at a price approved by the Court after a hearing.  Higher and better offers for the Debtor's rights in the Premises and under the Leases shall be solicited pursuant to the proposed notice of sale filed herewith (the "Sale Notice").  The sale shall be free and clear of all liens, claims, encumbrances and interests of any kind or nature, except as set forth in the P&S Agreement, and shall otherwise be governed by the terms and conditions set forth in the P&S Agreement and the Sale Notice.

12.     The sale is "AS IS" and "WHERE IS" without any representations or warranties of any kind.  Specifically excluded are WARRANTIES OF MERCHANTABILITIY OR FITNESS FOR A PARTICULAR PURPOSE.

13.     According to the Debtor's Schedules of Assets and Liabilities, the Property Rights are subject to the liens of Local Initiatives Support Corporation ("LISC"), North Shore Home Consortium ("NSHC"), Cutler Associates ("Cutler"), North Shore Construction ("North Shore") and Scituate Ray Precast Concrete Corp. ("Scituate").  Of these claims:

- the claim of NSHC is not now due (it is triggered solely by a failure to perform certain affordability covenants affecting the Premises, which are not in default);

- the claims of Cutler, North Shore and Scituate (all, on information and belief, arising from work performed in connection with the construction of the Premises) are listed as contingent, unliquidated and disputed, for notice purposes only; and

- the liens of LISC and NSHC are subject to avoidance due to defects in the mortgage documents evidencing those liens.

In any event, all liens, claims, encumbrances and interests, to the extent they are valid, will attach to the sale proceeds in the same order of priority and to the same extent as required under applicable state law, subject to the claims of the Trustee pursuant to Sections 506(a) and 506(c) of the Bankruptcy Code.

14.    There is no relationship between MHIC and the Trustee.  MHIC is not an insider of the Debtor, and none of the officers, directors or shareholders of the Debtor has an interest in MHIC.

15.    MHIC has at all times acted in good faith with respect to the negotiation and documentation of the proposed sale of the Property Rights, and MHIC's obligation to purchase the Premises and the Ground Leases shall be conditioned upon this Court's finding that MHIC is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code.

16.    The Trustee believes that the sale of the Premises and the Ground Leases is in the best interests of the Debtor's estate, since it appears that the Trustee has received an offer which is equivalent to the fair market value of the Premises and the Ground Leases.

17.    The P&S Agreement provides that, if the closing of the sale of the Premises and the assignment of the Ground Leases does not occur by December 1, 2009, MHIC shall be entitled to terminate the P&S Agreement and all of its obligations thereunder.  Accordingly, the Trustee requests that the Court schedule a hearing on this Motion prior to December 1, 2009, so that the closing may occur within the timeframe

established by the P&S Agreement.  In addition, as set forth in paragraph 42 of the P&S

Agreement, the Trustee requests that the Court establish a deadline for the submission of

higher and better offers and objections to the proposed sale that is no less than three (3)

days prior to the date of the hearing on this Motion.

WHEREFORE John O. Desmond, the Chapter 7 Trustee of the estate of Cape

Ann Housing Opportunity, Inc., requests that the Court enter an order:

(a)    granting the Trustee authority to sell, by way of private sale to MHIC or

its nominee, or such other person or entity submitting a higher and better

offer for the Property Rights pursuant to the Sale Notice, the Property

Rights, for consideration of $25,000;

(b)    authorizing the Trustee to assume, and assign to MHIC or its nominee, or

such other person submitting a higher and better offer pursuant to the Sale

Notice, the Debtor's interest as tenant under the Ground Leases;

(c)    finding that, in connection with the assumption and assignment of the

Ground Leases, neither the Trustee nor MHIC shall have any obligation to

cure any defaults under the Ground Leases, or compensate the nondebtor

party under the Ground Leases for any pecuniary losses arising

thereunder;

(d)    finding that MHIC has provided the nondebtor party to the Ground Leases

with adequate assurance of future performance thereunder;

(e)    finding that the sale is a legal, valid and effective transfer of the Property

Rights;

(f)     providing that the sale shall vest good title in the Property Rights, free and clear of all liens, claims, encumbrances and interests;

(g)     providing that all liens, claims, encumbrances and interests will attach to the sale proceeds in the order provided by applicable state law;

(h)     approving the form of Sale Notice;

(i)     finding that the Purchase Price constitutes reasonably equivalent value and fair consideration under the relevant provisions of the Bankruptcy Code and applicable state law;

(j)     finding that MHIC shall not be a successor to the Debtor or the Trustee, and shall not have any successor liability as a result of its purchase of the Property Rights;

(k)     directing that its order approving the sale of the Property Rights is not subject to the ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d);

(l)     finding that MHIC is purchasing in good faith in accordance with §363(m) of the Bankruptcy Code; and

(m)     granting such other relief as is deemed just and equitable.

Dated:  November 5, 2009

JOHN O. DESMOND, CHAPTER 7
TRUSTEE OF THE ESTATE OF CAPE
ANN HOUSING OPPORTUNITY, INC.

By his attorneys,


        /s/ Ryan M. MacDonald
Mark G. DeGiacomo, Esq. BBO#118170
Ryan M. MacDonald, Esq. BBO#654688
MURTHA CULLINA LLP
99 High Street
Boston, MA  02110
Tel.:  (617) 457-4000
Fax:  (617) 457-3868
Email: mdegiacomo@murthalaw.com
        rmacdonald@murthalaw.com

**EXHIBIT A**

## PURCHASE AND SALE AGREEMENT

This 30 day of October, 2009.

### 1.    PARTIES AND MAILING ADDRESSES

**John O. Desmond, the duly-appointed Chapter 7 Trustee of Cape Ann Housing Opportunity, Inc.,** hereinafter called the SELLER, agrees to SELL and **Massachusetts Housing Investment Corporation,** hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises (the "Premises"):

### 2.    DESCRIPTION

All of the SELLER'S right, title and interest in and to those certain pieces or parcels of land situated in Gloucester, Essex County, Massachusetts and shown as Parcels A, B and C on a plan entitled "Plan of Land in Gloucester, Mass. Surveyed and Prepared for LePage's Inc. Scale 1" = 80' Nov. 17, 1989 Sheet #1 of 2 by Thomas E. Neve Associates, Inc." and recorded in the Essex South District Deeds on March 22, 1993 in Plan Book 281 as Plan 34, including without limitation all of SELLER'S rights as landlord under the Leases (hereinafter defined).

### 3.    BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES

Included in the sale as a part of said premises are the buildings, structures and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith, including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers.

### 4.    TITLE DEED

Said premises are to be conveyed by a good and sufficient quitclaim deed, to be prepared by the BUYER, running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least two (2) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from all encumbrances, except:

(a)    Provisions of existing building and zoning laws;

(b)    Existing rights and obligations in party walls which are not the subject of written agreement;

(c)    Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;

(d)    Any liens for municipal betterments assessed after the date of this agreement;

(e)    Easements, restrictions and reservations of record, so long as the same do not prohibit or materially interfere with the current use of said premises, and are otherwise acceptable to Buyer, in Buyer's reasonable judgment

(f)    That certain Declaration of Development Obligations and Reciprocal Easement Agreement dated as of March 4, 2005, and recorded with the Essex County Registry of Deeds at Book 24064, Page 3; and

Page 1

(g)    (i)    The Amended and Restated Ground Lease dated as of March 4, 2005 between 147 Essex Avenue LLC and SELLER (the "Phase I Lease"),

(ii)    The Amended and Restated Phase II Condominium Ground Lease dated as of March 4, 2005 between 147 Essex Avenue II LLC and SELLER (the "Phase II Lease"), and

(iii)    The Phase III Condominium Gound Lease dated as of March 4, 2005 between 147 Essex Avenue III LLC and SELLER (the "Phase III Lease" and, collectively with the Phase I Lease and the Phase II Lease, the "Leases").

## 5.    PLANS

If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

## 6.    REGISTERED TITLE

In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to obtain a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

## 7.    PURCHASE PRICE

The agreed purchase price for said premises is **Twenty-Five Thousand** dollars ($25,000.00), subject to adjustments as provided in paragraphs 9 and 10 below of which

| $ | 5,000.00 | have been paid as a deposit this day,  and |
| $ | 20,000.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s). |
| $ | | |
| $ | 25,000.00 | TOTAL |

## 8.    TIME FOR PERFORMANCE; DELIVERY OF DEED

Such deed is to be delivered at 10:00 a.m. Boston time on the third business day following the entry of the Sale Approval Order (hereinafter defined) by the U.S. Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") in the Chapter 7 case of Cape Ann Housing Opportunity, Inc. (Case No. 09-11074)(the "Bankruptcy Case"), at the offices of Cohn Whitesell & Goldberg LLP, 101 Arch Street, Boston, MA, 02110, unless otherwise agreed upon in writing.  IT IS AGREED THAT TIME IS OF THE ESSENCE OF THIS AGREEMENT.

## 9.    POSSESSION AND CONDITION OF PREMISES

Full possession of said premises is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof.  The BUYER shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

## 10.    EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then the SELLER shall use diligent efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as

the case may be, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days.

**11.      FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

**12.      BUYER'S ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either

      (a)     pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, or

      (b)     if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of said mortgage.

**13.      ACCEPTANCE OF DEED**

The acceptance of a deed by the BUYER or his nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

**14.      USE OF MONEY TO CLEAR TITLE**

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed or reasonable arrangements have been made to obtain and subsequently record the same.

**15.      Intentionally Omitted.**

**16.      Intentionally Omitted.**

**17.      Intentionally Omitted.**

**18.      BROKER'S FEE**

Intentionally omitted.

**19.      BROKER'S WARRANTY**

Intentionally omitted.

20.    **DEPOSIT**

All deposits made hereunder shall be held in escrow by John O. Desmond, Esq., in the checking account for the bankruptcy estate of Cape Ann Housing Opportunity, Inc., subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given by the SELLER and the BUYER.


21.    **BUYER'S DEFAULT; DAMAGES**

If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages as SELLER's sole and exclusive remedy at law or in equity.

22.    **RELEASE BY HUSBAND OR WIFE**

Intentionally omitted.

23.    **BROKER AS PARTY**

Intentionally omitted.

24.    **LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**

If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

25.    **WARRANTIES AND REPRESENTATIONS**

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has BUYER relied upon any warranties or representations not set forth or incorporated in this agreement, except as set forth in Section 33 of this Agreement; without limiting the foregoing, BUYER acknowledges and agrees that the transaction provided for in this Agreement is an "as-is, where-is, with all faults" disposition of the Premises, that SELLER makes no representation or warranty of any kind, including concerning the physical condition of the Premises or any of the structures located thereon, or the environmental condition of the Premises, and that responsibility for any and all environmental releases and conditions located on the Premises is being expressly assumed by BUYER.

Without in any way limiting the foregoing, BUYER, on behalf of itself, its officers, directors, employees, and its and their respective successors and assigns, shall, and by the execution of this Agreement, hereby does, forever release and discharge SELLER of and from any and all claims, demands, obligations, costs, loss or damage, causes of action, legal or administrative proceedings, liabilities, defenses, penalties, fines, liens, judgments, or expenses whatsoever (including, without limitation, attorneys' fees and costs), whether at common law or by federal, state, county, or municipal law or ordinance, and whether direct or indirect, known or unknown, now existing or hereafter created, foreseen or unforeseen, arising out of or in any way connected with the environmental condition of the Premises, including without limitation SELLER's obligation to complete the response actions with respect to the Premises required pursuant to the provisions of the Massachusetts Contingency Plan ("MCP") and Massachusetts General Laws c.21E, and to achieve a response action outcome for RTN 3-22407. BUYER covenants and agrees never (directly or indirectly) to commence, aid in any way, or prosecute against SELLER any action or other proceeding based upon any claims, demands, causes of action, obligations, damages or liabilities released in this Section.

26.    **MORTGAGE CONTINGENCY CLAUSE**

Intentionally omitted.

27.    **CONSTRUCTION OF AGREEMENT**

This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER or their respective counsel. Extensions hereof may be executed by counsel for a party. The parties may rely upon facsimile copies of such written instruments. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28.    **Intentionally Omitted.**

29.    **Intentionally Omitted.**

30.    **ADDITIONAL PROVISIONS**

The initialed riders, if any, attached hereto, are incorporated herein by reference. If any provision in the Rider conflicts in any way with any other provision in Paragraphs One (1) through Thirty (30), inclusive, of this Agreement or with any addenda or exhibits hereto, the provision contained in the Rider shall control.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE
SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

SELLER:

John O. Desmond, Chapter 7 Trustee of Cape
Ann Housing Opportunity, Inc.                10/28/09

BUYER:

Massachusetts Housing Investment
Corporation

By:

Page 5

**Rider to Purchase and Sale Agreement by and between
John Desmond, Chapter 7 Trustee of Cape Ann Housing Opportunity, Inc., as
Seller, and Massachusetts Housing Investment Corporation, as Buyer**

**31.**    In order to facilitate the execution and delivery of certain documents contemplated hereby, the parties grant to their respective attorneys the actual authority to execute and deliver on each party's behalf any (a) agreement modifying the time for the performance of any event hereunder, or (b) any notice that may be given under this agreement, and the parties may rely upon the signature of such attorneys (including faxed signatures) unless they have actual knowledge that a party has disclaimed the authority granted herein.

**32.**    Buyer shall have the right of access to said premises and to the building or buildings thereon from the date hereof until the delivery of the deed hereunder.

**33.**    **REPRESENTATIONS AND WARRANTIES:**

(a)    Intentionally omitted.

(b)    Buyer represents and warrants to Seller that Buyer has the legal right, power and authority to enter into this Agreement and to perform all of its obligations hereunder.  This Agreement has been duly authorized, executed and delivered by Buyer and all consents required under Buyer's organizational documents or by laws have been obtained.  All documents that are to be executed by Buyer and delivered to Seller at the closing have been, or on the closing date will be, duly executed, authorized and delivered by Buyer.  This Agreement and all such documents are, and on the closing date will be, legal, valid and binding obligations of Buyer, enforceable in accordance with their terms and do not, and, at the time of the closing date will not, violate any provisions of any agreement or judicial or administrative order or decree to which Buyer is a party or to which Buyer is subject.

**34.**    Buyer and Seller each warrants and represents to the other that no broker introduced Buyer to the Seller and to said Premises, and Buyer and Seller each agrees to indemnify, defend and hold the other harmless from and against any and all costs and expenses for a brokerage commission or finder's fee arising out of any breach of the foregoing warranty and representation, including reasonable attorney's fees in connection with defense against any claim for the same.

**35.**    Intentionally omitted.

**36.**    Buyer's performance hereunder is conditioned upon title to the Premises being insurable on a standard ALTA form insurance policy by companies licensed to do business in the Commonwealth of Massachusetts without exception for any matter not expressly permitted herein.

37. At the time of delivery of Seller's deed, Seller shall execute and deliver to Buyer and any title insurance company insuring title to the Premises: (i) either (a) affidavits setting forth that Seller is not a foreign person or foreign corporation and providing Seller's United States Taxpayer Identification Number, or (b) such other documentation as is required by Section 1445 of the Internal Revenue Code and any regulations promulgated thereunder to exempt Seller and/or the sale of the Premises from the provisions of said Section 1445, so as to avoid the imposition of withholding tax on the proceeds due to Seller, and (ii) any other usual and customary affidavits, documents and certificates required by Buyer's title insurance company, to the extent of Seller's actual knowledge of the matters set forth therein.

38. Until the delivery of the deed, Seller shall not lease, sell, grant any easement or other rights or options in the Premises to any person that would be binding on Buyer following the closing.

39. In any dispute as to the existence or nonexistence of a defect in the title to the Premises, and as to all matters relating to acceptable conveyancing practice, the title and practice standards, respectively, formulated by the Real Estate Bar Association of Massachusetts shall be determinative.

40. Any notices required or permitted to be given by this Agreement shall be deemed duly given when mailed by registered or certified mail, return receipt requested, postage and registration or certification charges prepaid, or when hand delivered, or when received via Federal Express or other nationally recognized overnight courier, or when received by telephonic electronic facsimile between 9:00 A.M. to 5:00 P.M. on regular business days (otherwise the date of such facsimile notice will be deemed to be the next business day) addressed in the case of the Seller to:

John O. Desmond
Chapter 7 Trustee of
Cape Ann Housing Opportunity, Inc.
24 Union Avenue
Framingham, MA 01702

with a copy to:

Mark G. DeGiacomo, Esq.
Murtha Cullina LLP
99 High Street
Boston, MA 02110
Facsimile: 617-482-3868

and in the case of the Buyer to:

Massachusetts Housing Investment Corporation

Page 2

70 Federal Street
Boston, MA 02110
Attention: Ms. Sandra Blackman

with a copy to:

Michael J. Goldberg, Esq.
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
Facsimile: 617-951-0679

41.    Buyer and Seller represent and warrant to each other that the following are their true taxpayer identification numbers:
Buyer: ~~#04~~· 3094550   Seller: _____

## 42.    BANKRUPTCY COURT APPROVAL

(1)    Buyer's obligation to purchase the Premises shall be subject to the entry of the Sale Approval Order (defined below).

(2)    No later than five (5) business days following the Effective Date, Seller shall file, and thereafter diligently seek approval of a motion (the "Sale Motion") seeking entry of an order (the "Sale Approval Order") in the Bankruptcy Case by the Bankruptcy Court pursuant to   Sections 363 and 365 of title 11 of the United States Code (as amended, the "Bankruptcy Code") approving this Agreement and authorizing the sale of the Premises to Buyer free and clear of all liens, claims, encumbrances and other interests in the Premises other than the Leases.  The Sale Approval Order shall be in form and substance reasonably acceptable to Buyer, and shall at a minimum:

(a)    authorize the sale and conveyance of the Premises, pursuant to the terms and conditions of this Agreement and Sections 363(b) and (f) and to 365 of the Bankruptcy Code and the extent, if any, necessary, Section 105 of the Bankruptcy Code, free and clear of all claims, liens and encumbrances;

(b)    provide that the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or breach thereof; and

(c)    include findings of fact and conclusions of law, which, among other things, shall determine: (i) that Buyer is a good faith purchaser for purposes of section 363(m) of the Bankruptcy Code and, as such, is entitled to the protection afforded thereby; (ii) this Agreement was negotiated in good faith and from an arm's length bargaining position; (iii) neither Seller nor Buyer has engaged in any conduct that would permit this Agreement to be voided under section 363(n) of the Bankruptcy Code; (iv) that Buyer is not acquiring or

assuming Seller's or any person's liabilities except as expressly provided in this Agreement; and (v) that Seller timely and properly complied with its notice obligations under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Sale Motion, the notice of the final hearing on the Sale Motion (the "Sale Hearing") and the objection deadline shall, at a minimum, be served by Seller on 20 days notice in accordance with Bankruptcy Rules 2002, 6004, 6006 and 9014 on all persons required to receive notice under such Bankruptcy Rules including all persons which have asserted liens, encumbrances or other interests in the Premises, any committee of creditors or equity security holders appointed in the Bankruptcy Case under Section 1102 of the Bankruptcy Code, the United States Trustee, and each of the creditors of Seller, including:

(i)     all creditors listed in the schedule(s) of assets and liabilities filed in the Bankruptcy Case;

(ii)    all creditors who have filed proofs of claim in the Bankruptcy Case; and

(iii)   all creditors who have otherwise appeared in the Bankruptcy Case.

(3)     The Seller acknowledges that the Buyer has provided Seller with due diligence materials to facilitate a sale of the Premises, including without limitation information concerning the presence of environmental contamination at the Premises and the actions necessary to complete the response actions required with respect to such contamination.  In connection with the solicitation of higher and better offers for the Premises, Buyer shall, subject to final approval by the Court, be entitled to an amount equal to the documented costs of Buyer's due diligence, including without limitation the cost of obtaining the environmental information described in the foregoing sentence, not to exceed $1,250.00 (the "Break Up Fee"), to be paid to Buyer along with and in addition to the Deposit in the event of:  (a) the sale of the Premises to Buyer in accordance with the terms of this Agreement is not consummated as provided herein because of the entry of an order approving a sale of the Premises to another entity, or (b) the consummation of a sale of the Premises to any other entity.

(4)     In addition, in connection with the solicitation of higher and better offers for the Premises, any counteroffers for the Premises may be considered qualified and valid only to the extent the following requirements are strictly complied with:

(i)     any counteroffer must be filed with the Court by the deadline established by the Court (the "Counteroffer Deadline"), and served so as to be received by the Seller's counsel and the Buyer's counsel on or before the Counteroffer Deadline (and the Seller shall request that any hearing to approve the sale shall occur no earlier than 3 days after the Counteroffer Deadline);

(ii)    any counteroffers served upon Seller's counsel must be accompanied by a good faith deposit, in the form of a cashier's check, wire transfer or other immediately available funds, equal to Five Thousand Dollars ($5,000), delivered on or before the Counteroffer Deadline to Seller's counsel, to

be held in a non-interest bearing escrow pending the Bankruptcy Court's determination of the Sale Motion;

> (iii)    any counteroffer must be on the same terms, except as to price, contained in this Agreement (the "Counteroffer") and must not contain any contingencies as to the validity, effectiveness or binding nature of the counteroffer, including without limitation contingencies for financing, board approval or due diligence or inspection;

> (iv)    the cash component of any Counteroffer must be not less than $26,250, 5% greater than the value of the Buyer's cash price in this Agreement, and no credit bids will be accepted as part of any Counteroffer;

> (v)    the Counteroffer must by its terms provide that the offer embodied therein will remain in effect through the Sale Hearing and, to the extent that the Seller, subject to approval of the Court at the Sale Hearing, determines it to be the next highest offer to the offer ultimately approved at the Sale Hearing (the "Next Highest Offer"), that it shall remain in effect through the closing of the sale to the approved offeror and, to the extent the sale to the approved offeror cannot be closed on the terms set forth in the approved offer, that the Seller and the offeror that presented the Next Highest Offer shall close on a sale of the Premises on the terms of the Next Highest Offer without the need for further approval of this Court.

Further, the Sale Motion shall provide that, to the extent any Counteroffer is considered qualified and valid pursuant to the Sale Motion ("Qualified Counteroffer") is timely submitted with the Court by the Counteroffer Deadline and served upon the Seller and the Buyer, the Buyer hereby agrees that the Seller shall conduct an auction of the Premises at the Sale Hearing (the "Auction"). Each individual, group or entity who submitted a Qualified Counteroffer ("Counterofferor"), other than the Buyer, seeking to bid at the Auction must appear in person at the Auction or through a duly authorized representative. The Buyer shall, without further action, be a qualified bidder and shall be entitled to attend and bid at the Auction.

(5)    In the event that the Sale Approval Order, satisfying the requirements set forth in this Agreement, is not entered by December 1, 2009, Buyer shall have the right to terminate this Agreement by delivery of written notice to Seller, in which event all deposits made hereunder shall be returned to Buyer and neither party shall incur any further obligations or liability under this Agreement.

**43.**    If this transaction fails to close as a result of Seller's default, Buyer may elect to either have all deposits made hereunder returned or to pursue the remedy of specific performance; provided, however, that should specific performance be unavailable as a remedy due to the willful or intentional acts of Seller following the date of this Agreement, then Buyer shall have the right to pursue any and all available remedies, at law or in equity, on account of Seller's default.

**44.**    *Fees and Closing Costs.* Buyer shall pay for the recordation of the deed and such of the other documents delivered to, by or on behalf of Buyer at the closing as shall be recorded in connection with this transaction. Buyer shall also be solely

responsible for all survey costs, title insurance premiums and charges, title search charges and survey charges, and all real estate taxes with respect to the Premises that have accrued prior to the Closing. Seller shall pay any deed excise taxes imposed by the Commonwealth of Massachusetts on the transaction contemplated herein. Except as provided in Section 42 above, each of Seller and Buyer shall pay the fees and expenses of its counsel and other consultants retained in connection with the purchase or sale of the Premises. Seller and Buyer shall each pay such other Closing costs as are customarily paid by each such party in the Commonwealth of Massachusetts.

45.    Seller acknowledges that, in connection with the anticipated redevelopment of former Building K, located on the premises subject to the Phase III Lease (the "Phase III Premises"), a Notice of Intent under M.G.L. c.31, executed by the "owner" of the Phase III Premises, must be submitted to the Gloucester Conservation Commission, and that, in light of the transactions contemplated by this Agreement, Buyer intends to submit such a Notice of Intent, executed by Buyer as "owner," on or about September 23, 2009 (the deadline for filing the Notice of Intent if the redevelopment of Building K is to proceed in accordance with the currently anticipated construction schedule). Seller agrees that, if the Premises are sold to another entity pursuant to the procedures described in Section 42 of this Agreement, such sale shall be conditioned upon such entity's assumption of all of the obligations under the Notice of Intent and the Order of Conditions issued thereon. In the event that a sale to another entity is consummated, and the buyer in that transaction fails to assume the obligations under the Notice of Intent and the Order of Conditions, the Buyer may take such steps as are necessary to withdraw the Notice of Intent without further order of the Bankruptcy Court.

SELLER:

John O. Desmond, Chapter 7
Trustee of Cape Ann Housing Opportunity, Inc.

BUYER:

Massachusetts Housing Investment Corporation

By: _____